Michael C. HAYES, Petitioner,

v.

SECRETARY OF the ARMY, Clifford Alexander and the Commanding Officer of the 2nd Battalion, 37th Field Artillery, Fort Sill, Oklahoma, Respondents.

Thomas JEFFERSON, Petitioner,

v.

SECRETARY OF the ARMY, Clifford Alexander and the Commanding Officer of the 2nd Battalion, 37th Field Artillery, Fort Sill, Oklahoma, Respondents.

Civ. A. Nos. 78–152 Erie, 78–153 Erie.

United States District Court,
W. D. Pennsylvania.

April 17, 1979.

Michael E. Dunlavey, North East, Pa., for plaintiffs.

Robert J. Cindrich, U.S. Atty., John Paul Garhart, Asst. U.S. Atty., Pittsburgh, Pa., for respondents.

## MEMORANDUM OPINION

WEBER, Chief Judge.

Petitioners David C. Hayes and Thomas Jefferson had been members of the Army Reserve who were placed on active duty because they missed without excuse many required drills. They filed petitions for a Writ of Habeas Corpus removing them from active duty and reinstating them as members of the Reserve. The Court held an evidentiary hearing on the petitions on April 13, 1979, and believes that their petitions should be granted.

The basis of the petitions is that the Respondents placed Hayes and Jefferson on active duty, and thus increased the restraints on their freedom, without comply-

ing with two Army Regulations. The first is AR 135–91, 4–12(b)(2) which provides that after a reservist has been determined to be an unsatisfactory participant for an excessive number of unexcused absences from required drills, the unit commander shall make a "diligent effort" to deliver a notice of unsatisfactory participation and a right to appeal letter to the reservist and shall send these documents by certified mail if personal delivery cannot be accomplished. The second is AR 135–91, 4–12(b)(3)(c) which provides that an unsatisfactory reservist who has been placed on involuntary active duty will be informed that he has the following rights:

1. To appeal this decision in writing to his unit commander within 15 days if he considers it to be erroneous or alleges material error (chap. 7). In preparing his appeal, he will be permitted to examine his MPRJ and all other documents supporting his activation, in the presence of an authorized unit representative.

2. To request discharge based on conditions which are permanent in nature—dependency, hardship, or employment necessary to maintain the national or community health, safety or interest (AR 135–178/NGR 600–200).

3. To request delay in reporting for AD based on conditions which are temporary in nature or do not meet the criteria for discharge (AR 601–25).

█ The evidence presented is conflicting and ambiguous on the issue of whether Hayes and Jefferson were ever served, either personally or by certified mail, with notices of their unsatisfactory participation and right to appeal letters. The testimony of Army officials was unclear on whether any attempt was made to deliver the requisite notices to the Petitioners at their homes. Army officials did send the requisite notices by certified mail, but the notices were returned to the Army unclaimed because the Petitioners did not appear at their local post offices to claim them. Both Petitioners testified that they never found cards in their mail boxes indicating that certified mail was waiting for them at their local post offices, although both admitted receiving mail from the Army on other occasions. In this regard we find the Petitioners' testimony less than credible, but it is clear that the Petitioners did not see their notices of unsatisfactory participation which would have informed them of their rights to appeal and other relief.

The Army's evidence of attempts to give personal service was less than satisfactory in view of their obligation under their own regulations to use "diligent efforts" to do so. Only one instance of a call to the residence of each petitioner was testified to, and no efforts to inquire of neighbors or at their places of employment was shown, even though in one instance the Petitioner was employed at the same industrial plant as the non-commissioned officer who was directed to deliver notice. Despite the Petitioners' flagrant delinquency in attending drills, we must hold the Army to be subject to a higher standard of compliance with its own regulations when they attempt to place a reservist on involuntary active duty, and the evidence has shown that only a perfunctory attempt to comply with AR 135–91, 4–12(b)(2) was made.

█ The evidence on the second issue of whether the Petitioners were informed of their rights of appeal and other relief as required by AR 135–91, 4–12(b)(3)(c) favors the Petitioners and requires us to grant Writs of Habeas Corpus in their behalf. Both Petitioners testified that they were never told of their right to appeal the decision to place them on involuntary active duty, the right to seek a discharge based upon certain permanent conditions like hardship or employment important to the national interest, and their right to request delay in reporting for active duty for conditions temporary in nature. The Army had many opportunities to do so. Both Petitioners contend that they received their orders to report for active duty in August 1978. The orders themselves did not inform the Petitioners of their right, for example, to seek a hardship discharge for which both Petitioners contend they were eligible. Both testified that, upon receiving their

**1254**

orders, they went to their reserve headquarters to seek advice from the Army on the options available to them. Both Petitioners testified that they were told by Army personnel that they had no alternative but to report for active duty, and the Petitioners' testimony in this respect was confirmed by that of Army officials. For example, Mr. Edward DiMattio, a non-commissioned officer who also performed clerical duties for the reserve unit as a civilian employee of the Army, testified that he explained to them that since they had already received their orders, they were no longer members of the reserve unit and beyond the help of any one connected with that unit. He testified that he was unaware of their right to appeal or their right to apply for hardship discharge at that time.

The evidence produced at the hearing showed that the Petitioners were guilty of gross absenteeism. Hayes had 21 unexcused absences and Jefferson had 15 within a one year period. They were aware of this and the sanction of involuntary active duty which could be applied. Their own testimony establishes that they ignored their obligation because of the laxity of enforcement. Unknown to them, an Inspector General's review of the unit demanded that enforcement begin. Because other members whose attendance did not conform to regulations had prior active service or would shortly be eligible for discharge, the onus of the new enforcement policy fell largely upon the two Petitioners. That Hayes had some awareness of the process is shown by his sudden appearance at drills after the notice process of their unsatisfactory participation was underway.

Accordingly, in granting relief here, we believe that it is proper that the record of all prior unexcused absences remain, and that upon any further unexcused absence, the petitioners be subject to order to involuntary active duty upon proper compliance with the notice and right of appeal procedures provided by the Army Regulations.

An appropriate Order will be issued.